# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00099-CV

**St. Agnes Academy, Sharpstown Civic Association, and
Clarewood House Residents Association, Appellants**

**v.**

**Texas Alcoholic Beverage Commission and Club Bellaire, Inc. d/b/a El Corral, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT
## NO. D-1-GN-11-003234, HONORABLE GISELA D. TRIANA-DOYAL, JUDGE PRESIDING

## O P I N I O N

St. Agnes Academy, Sharpstown Civic Association, and Clarewood House Residents Association (collectively "Protestants") contested the application of Club Bellaire, Inc. d/b/a El Corral ("Club Bellaire") for a permit to sell alcoholic beverages in the vicinity of Protestants' properties. *See* Tex. Alco. Bev. Code Ann. § 5.435 (West 2007) (public participation in licensing or permitting hearings). Following a contested-case hearing, the administrative law judge (ALJ) recommended that Club Bellaire's application be granted. The Texas Alcoholic Beverage Commission (TABC) accepted the ALJ's recommendation and issued an order granting the application. *Id.* § 5.35 ("The commission may grant, refuse, suspend, or cancel alcoholic beverage permits and licenses as provided in this code."). Protestants then filed a suit for judicial review against the TABC and Club Bellaire in Travis County District Court pursuant to the Administrative Procedure Act (APA), Tex. Gov't Code Ann. §§ 2001.001-.902 (West 2008 & Supp. 2012). The

trial court granted the TABC's and Club Bellaire's pleas to the jurisdiction and dismissed the suit for lack of subject-matter jurisdiction without specifying its reasons. We will affirm.

## DISCUSSION

A plea to the jurisdiction challenges the court's authority to decide a case. *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 149 (Tex. 2012). Whether a court has subject-matter jurisdiction and whether a plaintiff has alleged facts that affirmatively demonstrate subject-matter jurisdiction are questions of law that we review de novo. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

In this lawsuit, Protestants sought judicial review of the TABC's order granting Club Bellaire's application for an alcoholic-beverage permit, which they challenged before the agency on the basis of the business's proximity to their real property, asserting that issuance of the requested permits would adversely affect the general welfare, health, peace, or safety of the people or violate the public sense of decency. *See* Tex. Alco. Bev. Code Ann. § 11.46(a)(8) (West Supp. 2012) (providing discretionary grounds for refusing application for alcoholic-beverage permit). The TABC and Club Bellaire filed pleas to the jurisdiction on the grounds that Protestants had no right to judicial review in this case because (1) section 11.67 of the Texas Alcoholic Beverage Code does not allow judicial review of TABC decisions granting an alcoholic-beverage permit, (2) even if the alcoholic beverage code authorizes judicial review in this case, Protestants failed to comply with statutory time limits provided in section 11.67, and (3) Protestants have not satisfied the APA's threshold requirements because they lack a justiciable interest and, therefore, are not "aggrieved" within the meaning of APA section 2001.171. *See id.* § 11.67 (West Supp. 2012) (authorizing

2

judicial review from appeal of refusal, cancellation, or suspension of alcoholic-beverage permit); Tex. Gov't Code Ann. § 2001.171 (West 2008) (authorizing judicial review for person aggrieved by decision in contested case after administrative remedies exhausted).

"It is well recognized under Texas law that there is no right to judicial review of an administrative order unless a statute provides a right or unless the order adversely affects a vested property right or otherwise violates a constitutional right." *Continental Cas. Ins. Co. v. Functional Restoration Assocs.*, 19 S.W.3d 393, 397 (Tex. 2000) (citing *Stone v. Texas Liquor Control Bd.*, 417 S.W.2d 385, 385-86 (Tex. 1967)). The Texas Supreme Court has held, however, that section 2001.171 of the APA provides an independent right to judicial review of agency orders as long as the relevant enabling act does not prohibit judicial review. *Texas Department of Protective & Regulatory Services v. Mega Child Care, Inc.*, 145 S.W.3d 170, 173, 199 (Tex. 2004). Thus, the central issue in this case is whether a provision in the Texas Alcoholic Beverage Code prohibits judicial review of TABC orders granting a permit.

On appeal, Protestants assert first that they have a right to judicial review under section 2001.171 of the APA because section 11.67 of the Texas Alcoholic Beverage Code, although specifically conferring a right to judicial review from an order "refusing, cancelling, or suspending" an alcoholic-beverage permit, does not expressly deny or prohibit judicial review from an order *granting* such a permit. Assuming they prevail on this threshold issue, Protestants also contend that (1) they are not subject to section 11.67's 20-day deadline for prosecuting a suit for judicial review, and (2) the trial court erred in excluding the testimony of witnesses offered to help establish that Protestants met the prerequisites to suit set forth in section 2001.171 of the APA.

With regard to the first issue, Protestants assert that the alcoholic beverage code is "silent" regarding judicial review of a TABC decision to grant an alcoholic-beverage permit because there is no language specifically prohibiting judicial review of that type of decision. Consequently, they contend that an independent right to judicial review exists under the APA based on the supreme court's decision in *Mega Child Care*, which recognized such a right absent a conflict with an agency's enabling statute. 145 S.W.3d at 173, 199. The TABC and Club Bellaire respond that the alcoholic beverage code is not silent regarding the right of judicial review of TABC orders on permit applications because the code specifically limits judicial review to TABC decisions *refusing*, *cancelling*, or *suspending* an alcoholic-beverage permit and provides detailed requirements for prosecuting such appeals. The principal dispute here concerns the scope of *Mega Child Care* as it relates to section 11.67 of the alcoholic beverage code, and in particular, what it means for a statute to be "silent" regarding judicial review of an agency "decision."

Under the alcoholic beverage code, the TABC has the power to "grant, refuse, suspend, or cancel alcoholic beverage permits and licenses as provided in [the] code." Alco. Bev. Code § 5.35. Chapter 11 of the code, which provides the general statutory provisions applicable to alcoholic-beverage permits, directs some provisions to all four categories of decisions specified in section 5.35 while limiting others to only one or more of those actions. *See generally id.* § 11.01-.73 (West 2008 & Supp. 2012). Section 11.67 is one of the provisions that includes references to some but not all of the decisions that the TABC is authorized to make. Specifically, if the TABC has refused, canceled, or suspended a permit, section 11.67 of the code expressly authorizes the applicant to appeal the TABC's decision subject to the following conditions:

4

(a)     *An appeal from an order of the commission or administrator refusing, cancelling, or suspending a permit or license may be taken* to the district court of the county in which the applicant, licensee, or permittee resides or in which the owner of involved real or personal property resides.

(b)     The appeal shall be under the substantial evidence rule and against the commission alone as defendant.  The rules applicable to ordinary civil suits apply, with the following exceptions, which shall be construed literally:

(1) the appeal shall be perfected and filed within 30 days after the date the order, decision, or ruling of the commission or administrator becomes final and appealable;

(2) the case shall be tried before a judge within 20 days from the date it is filed;

(3) neither party is entitled to a jury; and

(4) the order, decision, or ruling of the commission or administrator may be suspended or modified by the court pending a trial on the merits, but the final judgment of the district court may not be modified or suspended pending appeal.

(c)     A local official, on record as protesting the issuance or renewal of a permit or license at a hearing provided by this code, is entitled to notice of the appeal.  If other persons are on record as protesting the issuance or renewal of a permit or license at a hearing provided by this code, the first three persons to be on record are entitled to notice of the appeal.  The appellant is responsible for causing the notice to be given.  The notice shall be given by sending, on or before the third day after the date on which the appeal is filed, a copy of the petition by registered or certified mail to the persons entitled to receive the notice.

(d)     If the appeal is from an order refusing the issuance or renewal of a permit or license for a business that is sexually oriented, any person may appear on appeal against the issuance or renewal of the license or permit.  However, the court may grant a motion to strike the person's appearance on a showing that the person does not have a justiciable or administratively cognizable interest in the proceeding.

5

*Id.* § 11.67 (emphasis added). Section 11.67 does not mention an appeal from a TABC decision to *grant* a permit application. Nor does any other provision in chapter 11 or the alcoholic beverage code specifically reference the granting or denial of such a right. Because the legislature expressly provided for the right to judicial review with respect to some TABC actions on alcoholic-beverage permits but did not mention the only other possible action the TABC could take, the parties dispute whether the alcoholic beverage code is "silent" with regard to the legislature's intent to preclude judicial review from a decision granting a permit application.

The overarching issue in *Mega Child Care* was whether the APA provides an independent right to judicial review of an agency determination or merely establishes procedural requirements that do not confer independent subject-matter jurisdiction on district courts. *See generally* 145 S.W.3d at 173. After exhaustively reviewing the statutory and common-law history predating the APA and its predecessor statute, the Administrative Procedure and Texas Register Act (APTRA),[1] the supreme court concluded that the plain language of APA section 2001.171 unambiguously creates an independent right to judicial review for those who satisfy that section's threshold requirements, which include exhaustion of administrative remedies and a final decision in a contested-case hearing. *Id.* at 196. Acknowledging that the right established in the APA does not supersede a contrary directive in an administrative agency's enabling statute, the court held that "section 2001.171 [of the APA does provide] an independent right to judicial review of a contested-case decision when the agency's enabling statute *neither specifically authorizes nor*

---

[1] 64th Leg., R.S., ch. 61, 1975 Tex. Gen. Laws 136 (codified in 1993 as the Administrative Procedure Act) (currently Tex. Gov't Code Ann. §§ 2001.001-.902 (West 2008 & Supp. 2012)).

*prohibits judicial review of the decision*." *Id.* at 173 (emphasis added). In considering whether an enabling statute "specifically" rebuts the presumption of a right to judicial review under the APA, the court stated that "[i]n the absence of express statutory language prohibiting judicial review, a legislative intent to prohibit judicial review must be established by specific legislative history *or other reliable evidence of intent*." *Id.* at 199 (emphasis added).

The pertinent chapter of the statute at issue in *Mega Child Care*—chapter 42 of the Texas Human Resources Code—made no mention of or reference to judicial review from any decision by the agency. It was utterly silent on that subject and therefore included no provisions or terms that conflicted with the APA. *Id.* at 198 (construing former Tex. Human Res. Code Ann. § 42.072, which was subsequently amended in 2005 to expressly include right of judicial review from decision to deny, suspend, revoke, or refuse to renew license, listing, or registration for child-care facility). The legislative history showed that a provision in chapter 42 that had expressly authorized judicial review had been deleted as part of the agency's sunset review legislation while a similar provision in a different chapter of the enabling statute was retained. The court concluded that this history was insufficient evidence of legislative intent to prohibit judicial review of the agency's decision in light of other legislative history indicating that the legislature intended to maintain, rather than prohibit, judicial review. *Id.* at 199. Accordingly, the court held that chapter 42 did not specifically prohibit judicial review and that the APA therefore entitled child-care licensees to appeal administrative decisions revoking child-care-facility licenses.

Unlike the statute at issue in *Mega Child Care*, the enabling statute at issue in the present case is not totally silent regarding the right to judicial review. Rather, it speaks extensively

7

concerning judicial review and the terms upon which it may be pursued. *Mega Child Care* did not involve such a scenario and thus is distinguishable. Here, we are left to apply the supreme court's directive that the APA controls absent a specific prohibition of the right to judicial review in the enabling statute. We construe *Mega Child Care* to mean that such a "specific prohibition" may be in the form of express statutory language, structure of the statutory scheme, legislative history, or other reliable evidence of legislative intent. This, of course, begs the question about how "specific" the prohibition has to be.

The TABC and Club Bellaire assert that *Mega Child Care* should be read broadly to refer to decisions regarding issuance of alcoholic-beverage permits generally. In that regard, it is clear that the statute is not silent. Protestants, on the other hand, construe *Mega Child Care* narrowly to mean that every category or type of decision—here, a decision to grant, deny, cancel, or suspend—must be expressly referenced for there to be a conflict with the APA. Under this view, it would seem that the statute is in fact silent as to an appeal from the *granting* of a permit.

We do not believe, however, that it is reasonable to read *Mega Child Care* as requiring the granulation of specificity that Protestants suggest. As the supreme court's analysis in *Mega Child Care* acknowledges, whether and to what extent a particular statute precludes judicial review is determined not only from its express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved. *See id.* at 196-99 (considering statutory language, legislative acceptance doctrine, legislative history, and structure of statute as whole in concluding there was insufficient evidence of legislative intent to preclude judicial review of denial of child-care-facility license). In *Mega Child Care*, the

8

supreme court essentially recognized a presumption favoring judicial review of administrative actions but acknowledged that, as with all presumptions used in interpreting statutes, the presumption could be overcome by specific language, legislative history, or other reliable indicators of legislative intent. As reflected in the supreme court's analysis, a legislative intent to overcome such a presumption may be inferred from a number of sources, including contemporaneous judicial construction barring review and the legislative acquiescence to it or the collective import of legislative and judicial history behind the enabling statute. *See generally id.*; *cf. also Block v. Community Nutrition Inst.*, 467 U.S. 340, 349 (1984) (considering whether milk consumers were entitled to seek judicial review of Secretary of Agriculture's milk-market orders under federal Administrative Procedure Act in absence of provisions in Agriculture Act granting right of judicial review to consumers). The presumption favoring judicial review of administrative decisions may also be overcome by clear inferences of intent drawn from the statutory scheme as a whole, and "when a statute provides a detailed mechanism for judicial consideration of particular issues at the behest of particular persons, judicial review of those issues at the behest of other persons may be found to be impliedly precluded." *Block*, 467 U.S. at 349 (holding that consumers were not entitled to seek judicial review of certain agency decisions under federal APA because statute expressly granted right of judicial review to producers and handlers of dairy products but was silent with regard to consumers).

Construing the provision broadly, section 11.67 of the alcoholic beverage code is not silent regarding judicial review of TABC orders; in fact it is quite detailed about what and how TABC decisions may be appealed. *Cf. Railroad Comm'n v. Texas Citizens for a Safe Future*

*& Clean Water*, 336 S.W.3d 619, 628 (Tex. 2011) ("When the Legislature uses a word or phrase in one portion of a statute but excludes it from another, the term should not be implied where it has been excluded."). The TABC can take only four actions on an application for an alcoholic-beverage permit—grant, refuse, cancel, or suspend. When the TABC makes a final determination on a permit application, there are only two categories of persons who might be aggrieved by the TABC's action—the applicant and those persons contesting the application. When the TABC cancels, suspends, or refuses to grant a permit, only the applicant is aggrieved. Thus, by conferring a limited right to appeal from such decisions, the alcoholic beverage code effectively authorizes only applicants to appeal adverse TABC decisions on permit applications.

This scenario is similar to the statutory provision this Court examined in *Coastal Habitat Alliance v. Public Utility Commission* and determined to impliedly preclude a right to judicial review under the APA. 294 S.W.3d 276, 282 (Tex. App.—Austin 2009, no pet.). In *Coastal Habitat*, we considered whether a non-party to a Public Utility Commission (PUC) proceeding brought under the Public Utility Regulatory Act (PURA) had a right to judicial review under the APA. Section 15.001 of PURA expressly authorizes judicial review of PUC decisions in the following language: "*Any party* to a proceeding before the commission is entitled to judicial review under the substantial evidence rule." Tex. Util. Code Ann. § 15.001 (West 2007) (emphasis added). The issue there was whether section 15.001's language rebutted the presumption of a right to judicial review under the APA for non-parties, as to whom the statute was silent in a narrow sense. Because section 15.001 specifically authorized judicial review for "any party," however, we held that "a non-party to a proceeding before the Commission is not statutorily entitled to judicial review of

10

the Commission's decision to deny intervention under either the PURA or the APA." *Coastal Habitat*, 294 S.W.3d at 282. Although section 15.001 did not specifically deny a right of judicial review to "non-parties," we concluded that by expressly authorizing judicial review for one category of potentially aggrieved persons, the statute was not silent and the APA did not provide an independent right of judicial review contrary to PURA's express terms. The statute at issue in the present case, section 11.67 of the alcoholic beverage code, has the same effect as section 15.001 of PURA—by specifying what decisions may be appealed, it necessarily limits the categories of persons who may appeal and impliedly forecloses review to the class to which Protestants belong.

Considering the alcoholic beverage code as a whole, it is further evident that it would be discordant with the specific limitations on judicial review in section 11.67 to allow Protestants to obtain judicial review under the APA. Section 11.67 delineates the decisions that can be appealed, designates a preferred venue, limits the parties to the proceeding, requires an expedited ruling, and limits suspension of the agency's action. These limitations and requirements are not found in the APA provisions concerning judicial review. Therefore, if a decision granting a permit application were appealable under the APA by those protesting the application, that appeal would not be subject to these limitations. This would create an anomalous situation in which more favorable procedures would apply to judicial review of an order granting a permit than to an order refusing, cancelling, or suspending a permit. *Compare* Alco. Bev. Code § 11.67 (limitations on right to judicial review) *with* Gov't Code §§ 2001.171-.901 (general procedures applicable in suit for judicial review from agency decisions). There is no plausible explanation why more favorable terms should apply to judicial review of an order granting a permit, given that the consequences of cancelling or

11

suspending a permit are recognized by the code as being relatively more severe. The relative severity of consequences is recognized in a number of provisions that authorize the imposition of civil penalties and state with particularity the grounds for suspending or cancelling a permit, alternative penalties, and the process that is due in such cases. *See, e.g.*, Alco. Bev. Code §§ 11.61-.66.

Because a grant of a permit differs categorically from refusal, suspension, and cancellation, the distinction embodied in section 11.67 is significant. It is further significant that this distinction is carried throughout the code. *See, e.g.*, Alco. Bev. Code §§ 11.67 (appeal from cancellation, suspension, or refusal of license or permit), 32.18 (appeal from order refusing, cancelling, or suspending private club registration), 61.34 (appeal from denial of application for beer license), 61.81 (appeal from cancellation, suspension, or refusal of beer license). In contrast, nowhere in the alcoholic beverage code is there an express provision for judicial review of an order granting a permit. In a complex scheme of this type, the omission of such a provision—as contrasted with several provisions authorizing judicial review from the category of decisions involving permit refusals—strongly indicates that the legislature intended to foreclose judicial review from the category of decisions in which a permit is granted. When the alcoholic beverage code is construed as a whole, it is clear that the specific words the legislature chose to describe the right of appeal under section 11.67 were deliberate and were intended to foreclose an appeal from a decision granting a permit application. The allocation of appellate rights only to aggrieved applicants is implicit in this alignment.

By specifying so extensively the limitations on judicial review under section 11.67, the legislature has manifested an intent to exclude that which is not included. It is immaterial

whether the statutory language is considered to be "express" or whether legislative intent is clearly manifested in some other way, because either is acceptable under *Mega Child Care*. *Cf. PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd. P'ship*, 146 S.W.3d 79, 84 (Tex. 2004) ("When the Legislature includes a right or remedy in one part of a code but omits it in another, that may be precisely what the Legislature intended. . . . [W]e must honor that difference." (footnotes omitted)). Thus, we conclude that section 11.67 is not "silent" regarding the right to judicial review from a TABC decision to grant an alcoholic beverage permit and that Protestants are not entitled to judicial review of the TABC's decision to grant Club Bellaire's application.

The legislative history of the alcoholic beverage code bolsters this conclusion. The present statute was codified in 1977 as a non-substantive revision of the Texas Liquor Control Act, which was originally enacted in 1935 and amended in 1937 before it was codified. *See* Alco. Bev. Code § 1.01 ("This code is enacted as part of the state's continuing statutory revision program[, which] contemplates a topic-by-topic revision of the state's general and permanent statute law *without substantive change*." (emphasis added)). In codifying the statute as a non-substantive revision, the legislature intended to carry forward the prior law. *Cf. Energy Serv. Co. of Bowie, Inc. v. Superior Snubbing Servs., Inc.*, 236 S.W.3d 190, 195 (Tex. 2007) ("Absent any identifiable reason for a substantive change to have been made in the statutory provision, or any extra-textual indication that one was intended, or any resulting change in industry practice, we think the most reasonable construction [of the statute at issue] is the same as its [predecessors]."). In the case of the alcoholic beverage code, the source law—like the codified law and the current statute—specifically authorized an appeal from an order refusing, cancelling, or suspending a permit

13

and did not mention an appeal from an order granting a permit application. The significance of that omission is that the statute operated for decades in a legal environment in which no right of appeal existed unless a statute expressly authorized an appeal. Although *Mega Child Care* changed the effect of legislative silence in a statute following the enactment of APTRA and the APA, there was a contrary presumption when the prior version of section 11.67 was in effect, and in that legal environment, the absence of express authority to appeal indicated legislative intent to preclude judicial review. We believe that intent was carried forward in the 1977 codification.

The predecessor statute, the Texas Liquor Control Act, was originally enacted in 1935 and, like the current statute, gave the Liquor Control Board the authority "[t]o grant, refuse, suspend, or cancel permits for the purchase, transportation, importation, sale or manufacture of liquor or other permits in regard thereto." Act of Nov. 15, 1935, 44th Leg., 2d C.S., ch. 467, art. I, § 16, 1935 Tex. Gen. Laws 1795, 1798. The act further provided that "any person . . . aggrieved by any decision, rule, or order of the board . . . shall have the right of an appeal therefrom to the District Court of the County in which [the complained of action] would become effective." *Id.* § 14.

In 1937, however, the statute was amended to a form that is similar to the current version of section 11.67, providing that "any order of the Board or Administrator refusing, cancelling, or suspending a permit or license may be taken to the District Court of the County in which the aggrieved licensee or permittee, or the owner of involved real or personal property may reside." Act of June 8, 1937, 45th Leg., R.S., ch. 448, § 15, 1937 Tex. Gen. Laws 1053, 1065 (codified 1977). The statute also included a general venue provision for "all other suits against the

14

Board" to be filed in Travis County. *Id.*[2] All suits against the Board, regardless of the nature, were subject to similar limitations as those provided in the current version of section 11.67,[3] including the restriction that "the proceeding on appeal shall be against the Board alone as defendant." Act of June 8, 1937, 45th Leg., R.S., ch. 448, § 15, 1937 Tex. Gen. Laws 1053, 1065 (codified 1977); Alco. Bev. Code § 11.67. By specifying that only the agency could be a defendant in an appeal, appeals by contestants were necessarily excluded, because otherwise the applicant would not have been able to participate, which we believe the legislature could not have intended.

In addition, while this statute was in effect, the supreme court held that no right of judicial review existed unless specified by statute. *See City of Amarillo v. Hancock*, 239 S.W.2d 788, 790-91 (Tex. 1951). In *Hancock*, the court considered a statute that concerned suspensions and dismissals of fire-department personnel in one provision and demotions in another.

---

[2] This provision is now found in section 5.17 of the alcoholic beverage code. *See* Alco. Bev. Code § 5.17 ("In all suits against the commission, except appeals governed by Section 11.67 or 32.18 of this code, venue is in Travis County.")

[3] "The proceeding on appeal shall be against the Board alone as defendant and the trial shall be de novo under the same rules as ordinary civil suits, with the following exceptions, which shall be considered literally, viz:

a.  All appeals shall be perfected and filed within thirty (30) days after the effective date of the order, decision or ruling of the Board of Administrator.
b.  Such proceedings shall have precedence over all other causes of a different nature.
c.  All such causes shall be tried before the Judge within ten (10) days from the filing thereof, and neither party shall be entitled to a jury.
d.  The order, decision or ruling of the Board or Administrator may be suspended or modified by the District Court pending a trial on the merits, but the final judgment of the District Court shall not be modified or suspended pending appeal."

Act of June 8, 1937, 45th Leg., R.S., ch. 448, § 15, 1937 Tex. Gen. Laws 1053, 1065.

15

The section of the statute concerning suspensions and dismissals clearly authorized judicial review for either a suspension or dismissal and provided time limits for pursing an appeal, but the section concerning demotions did not speak to whether there was a right to appeal. Accordingly, the court held that there was no right to judicial review of a demotion. *Id.* at 792.

Consistent with *Hancock*, the supreme court later considered whether, under the Liquor Control Act, a party that had contested an application had a right to judicial review of an order by the Liquor Control Board granting a beer license. *See Stone v. Texas Liquor Control Bd.*, 417 S.W.2d 385, 385-87 (Tex. 1967). The statute at issue in *Stone* authorized "[a]ny citizen" to contest the application and further provided an express right to appeal a denial of the application. *Id.* at 386 (citing former art. 667–6(a), (d), Act of May 14, 1943, 48th Leg., R.S., ch. 325, 1943 Tex. Gen. Laws 509, 531) (current version at Tex. Alco. Bev. Code Ann. §§ 61.31–.34 (West 2008)). In the event of such an appeal, the statute provided that "[a]ny person appealing from the judgment of the County Judge shall give bond for all costs incident to such appeal and shall be required to pay such costs if the judgment on appeal is unfavorable to the applicant but not otherwise." Act of May 14, 1943, 48th Leg., R.S., ch. 325, 1943 Tex. Gen. Laws 509, 532 (former section 667–6(e)). It was argued that the statute thus contemplated an appeal by a party contesting an application, but the supreme court held that no such right existed under the general rule that "there is no right of appeal from an administrative order unless the statute provides for the same or unless the order violates a constitutional right or adversely affects a vested property right." *Stone*, 417 S.W.2d at 385-86.

16

The APA was enacted subsequent to the foregoing cases and is now recognized to provide an independent right to judicial review in the face of legislative silence in the relevant enabling act, contrary to the holdings in those cases. It is significant, however, that no right to judicial review from a TABC order granting a permit application was expressly authorized in the source law at a time when it would have been required in order for such a right to exist. The only inference that can be drawn is that no such right was intended and that this intent was carried forward in the 1977 non-substantive codification of the statute.[4] That being the case, the historical development of the judicial review provision codified in section 11.67 further confirms that the distinctions embodied in the provision are intentional and that Protestants do not have the right to appeal the TABC's order granting Club Bellaire's application for an alcoholic-beverage permit under the alcoholic beverage code or the APA.

Having determined that Protestants are not entitled to judicial review of the TABC's order granting club Bellaire's application for an alcoholic-beverage permit, we do not reach Protestants' other issues on appeal.

---

[4] A "Revisor's Note" to the codification of the alcoholic beverage code indicates that the legislature believed that APTRA, which had been enacted in the previous legislative session, provided an independent right of judicial review. *See* Tex. Alco. Bev. Code Ann. § 11.67 (Revisor's Note); *see also Texas Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 184 (Tex. 2004) (citing section 11.67's Revisor's Note as indicating legislative recognition of APTRA as guaranteeing right to judicial review). The Revisor's Note does not, however, indicate that the legislature intended to change the alcoholic beverage code to confer a right of review from an order granting a permit application. An acknowledgment of APTRA as an independent law does not bespeak an intent to expand the rights recognized under the alcoholic beverage code's source law.

## CONCLUSION

We hold that the APA does not provide Protestants with a right to judicial review because the Texas Alcoholic Beverage Code forecloses judicial review of the TABC's order granting Club Bellaire's application for an alcoholic-beverage permit. Therefore, we affirm the trial court's judgment dismissing Protestants' suit for judicial review for lack of subject-matter jurisdiction.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Rose and Goodwin

Affirmed

Filed:   December 12, 2012